French, J.,
dissenting.
{¶ 34} Because I would answer the certified-conflict question in the affirmative, I respectfully dissent.
{¶ 35} In my view, a statutory cause of action under R.C. 3721.24 arises only after an employee or other person used to perform work or services reports or indicates an intention to report suspected abuse or neglect of a resident to the Ohio director of health. Nevertheless, I would adopt the proposition of law raised by Patricia Hulsmeyer’s cross-appeal and hold that an employee who reports or indicates an intention to report suspected abuse or neglect of a resident not to the director of health but to another appropriate person, such as the reporter’s employer, the long-term-care facility or residential-care facility, the resident’s family, or law enforcement, may assert a common-law claim for wrongful discharge in violation of public policy.
{¶ 36} The General Assembly enacted R.C. 3721.22 to 3721.26 together, as part of a comprehensive scheme governing reports of abuse and neglect of long-term-care-facility or residential-care-facility residents. Am.Sub.H.B. No. 822,143 Ohio Laws, Part IV, 6652, 6689-6694. As particularly relevant here, R.C. 3721.22, 3721.23, and 3721.24 are interrelated.
{¶ 37} R.C. 3721.22(A) requires a “licensed health professional” to report known or suspected abuse or neglect of a resident to the director of health, whereas R.C. 3721.22(B) permits any other person, including a resident, to report known or suspected abuse or neglect to the director of health. The director of *247 health is, in turn, required to “receive, review, and investigate allegations of abuse or neglect of a resident” and to make findings regarding those allegations. R.C. 3721.23(A). Any person who makes a good-faith report to the director of health under R.C. 3721.22, provides information during the director’s investigation under R.C. 3721.23, or participates in a hearing conducted by the director under R.C. 3721.23 is immune from criminal prosecution, damages in a civil action, and professional discipline. R.C. 3721.22(C).
{¶ 38} R.C. 3721.24 provides additional protection for a person who reports suspected abuse or neglect of a resident. R.C. 3721.24(A) prohibits retaliation against an employee or other person used to perform work or services who makes a good-faith report of suspected abuse or neglect of a resident, indicates an intention to make such a report, provides information during an investigation conducted by the director of health under R.C. 3721.23, or participates in a hearing under R.C. 3721.23 or other administrative or judicial proceedings pertaining to the suspected abuse or neglect. R.C. 3721.24(C) establishes a cause of action for harm resulting from prohibited retaliation.
{¶ 39} The crux of this case lies in R.C. 3721.24’s silence as to the person to whom a person must report or indicate an intention to report suspected abuse or neglect in order to claim statutory protection from retaliation. Despite the statute’s silence on that issue, the majority concludes that R.C. 3721.24 is unambiguous and holds that a plaintiff need not report or indicate an intention to report suspected abuse or neglect to the director of health in order to have a cognizable claim under R.C. 3721.24. In contrast, I conclude that the statute is ambiguous because the silence in R.C. 3721.24(A) regarding the recipient of a report renders the statute subject to varying interpretations. Sheet Metal Workers’ Internatl. Assn., Local Union No. 33 v. Gene’s Refrigeration, Heating & Air Conditioning, Inc., 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 29 (finding ambiguity because R.C. 4115.05 did not specify whether work had to be performed on the construction-project site to be subject to prevailing-wage requirements).
{¶ 40} When a statute is ambiguous, we look to the statutory language, the circumstances in which the statute was enacted, legislative history, and the consequences of a particular construction to determine the legislature’s intent. Id. We also construe statutes pertaining to the same subject matter in pari materia “to discover and carry out legislative intent.” Id. at ¶ 38, citing State ex rel. Ellis Super Valu, Inc. v. Indus. Comm., 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 13. Accordingly, we should read R.C. 3721.24 in pari materia with R.C. 3721.22 and 3721.23, which were enacted at the same time and relate to the same subject matter. See Sheet Metal Workers’ Internatl. Assn, at ¶ 33-38 *248 (reading R.C. 4115.05 in the context of the entire prevailing-wage statutory-scheme and related regulations).
{¶ 41} R.C. 3721.22 authorizes, and in some cases mandates, reports of actual or suspected abuse or neglect of residents to the director of health, and R.C. 3721.23 requires the director of health to receive and act upon those reports. R.C. 3721.24 protects from retaliation a person who reports suspected abuse or neglect or who participates in the resultant investigatory and/or adjudicatory process. The Revised Code does not provide for reports of abuse or neglect to recipients other than the director of health. Moreover, the immunity provided by R.C. 3721.22(C) and the prohibition against retaliation established by R.C. 3721.24 arise not only from reports of abuse or neglect, but also from participation in the investigatory process that, pursuant to R.C. 3721.23, results from reports to the director of health. Reading these statutes together, I conclude that a statutory claim under R.C. 3721.24 requires a report, or an indication of intent to report, to the director of health. See Arsham-Brenner v. Grande Point Health Care Community, 8th Dist. Cuyahoga No. 74835, 2000 WL 968790, *6 (July 13, 2000).
{¶ 42} The majority’s reading of R.C. 3721.24, in isolation from the related provisions, suggests that there is no limitation whatsoever on the recipient of a report of suspected abuse or neglect. Under the majority’s reading, an employee’s statutory entitlement to protection from retaliation would extend far beyond the employee’s reporting of suspected abuse to obvious and appropriate recipients, like the employee’s supervisor or the resident’s family. For example, an employee would be entitled to protection upon casually relating suspicions of abuse or neglect to the employee’s spouse, a neighbor, a news station, or an online message board. In light of the overlap between R.C. 3721.22 through 3721.24, the director of health’s statutory responsibility for investigating allegations of resident abuse or neglect, and the silence in R.C. 3721.24,1 cannot agree that the General Assembly intended such a broad application.
{¶ 43} Despite my conclusion regarding R.C. 3721.24, I would hold that Hulsmeyer’s complaint stated a cognizable common-law claim for wrongful discharge in violation of public policy. A public-policy wrongful-discharge claim requires proof of the following elements: (1) a clear public policy is manifested in a state or federal constitution, in a statute or administrative regulation, or in the common law, (2) dismissing the employee under circumstances like the plaintiffs would jeopardize the public policy, (3) conduct related to the public policy motivated the employer to dismiss the plaintiff, and (4) the employer lacked an overriding legitimate business justification for the dismissal. Collins v. Rizkana, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995), citing Painter v. Graley, 70 Ohio *249 St.3d 377, 384, 639 N.E.2d 51 (1994), fn. 8. The first two elements — the clarity and jeopardy elements — are questions of law for the court. Id. at 70.
{¶ 44} Cross-appellees, Brookdale Senior Living, Inc., Hospice of Southwest Ohio, Inc., and Joseph Killian, do not dispute the existence of a clear public policy encouraging the reporting of abuse and neglect of long-term-care-facility or residential-care-facility residents and protecting those who make such reports. R.C. 3721.22 and 3721.24 express that clear policy. The General Assembly has also “enunciated a public policy in favor of special protection of nursing-home residents through its passage of the Ohio Nursing Home Patients’ Bill of Rights, R.C. 3721.10 et seq.” Hayes v. Oakridge Home, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 51 (Pfeifer, J., dissenting). As relevant here, a resident is entitled to have any significant change in the resident’s health status promptly reported to the resident’s sponsor. R.C. 3721.13(A)(32). A “sponsor” is “an adult relative, friend, or guardian of a resident who has an interest or responsibility in the resident’s welfare.” R.C. 3721.10(D).
{¶ 45} In opposition to Hulsmeyer’s cross-appeal, cross-appellees argue only that the absence of a common-law claim does not jeopardize the public policy encouraging the reporting of suspected resident abuse and neglect. First, consistent with their arguments to the trial court and the court of appeals, they argue that R.C. 3721.24 provides a sufficient and appropriate remedy to vindicate the public policy. The court of appeals agreed and held that Hulsmeyer was not entitled to maintain a public-policy wrongful-discharge claim, because she had a remedy by way of a statutory claim under R.C. 3721.24. 2013-Ohio-4147, 998 N.E.2d 517, ¶ 31 (1st Dist.). While an applicable statutory remedy may justify a refusal to recognize a public-policy wrongful-discharge claim, see Dolan v. St. Mary’s Mem. Home, 153 Ohio App.3d 441, 2003-Ohio-3383, 794 N.E.2d 716 (1st Dist.), I conclude that R.C. 3721.24 does not provide Hulsmeyer an adequate remedy, because it does not apply to employees, like Hulsmeyer, who report suspicions of resident abuse or neglect to someone other than the director of health.
{¶ 46} Cross-appellees also argue, for the first time to this court, that the public policy encouraging reports of abuse and neglect is not jeopardized in the absence of a public-policy wrongful-discharge claim, because, even without a claim under R.C. 3721.24, Hulsmeyer could have reported any reasonable suspicion of abuse or neglect to her employer pursuant to Ohio’s Whistleblower Statute, R.C. 4113.52. Review of Hulsmeyer’s complaint, however, demonstrates the inapplicability of that statute.
{¶ 47} R.C. 4113.52 applies when
*250 Robert A. Klingler Co., L.P.A., Robert A. Klingler, and Brian J. Butler, for appellee and cross-appellant.
an employee becomes aware in the course of the employee’s employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee’s employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution.
R.C. 4113.52(A). But there is no indication in Hulsmeyer’s complaint that she suspected a criminal offense that was likely to cause an imminent risk of physical harm, a felony, or an improper solicitation for a contribution that her employer had authority to remedy. Rather, Hulsmeyer alleged that she believed the likely cause of the resident’s bruising was an excessively tightened bag from a Foley catheter. Furthermore, R.C. 4113.52(D) protects from retaliation an employee who has made a report to her employer or to a prosecuting or regulatory authority, whereas Hulsmeyer alleges that Hospice terminated her for reporting the suspected abuse to Pat Cinquina’s family and for allegedly not informing Hospice. Accordingly, the facts as alleged in Hulsmeyer’s complaint do not demonstrate the availability of whistle-blower protection under R.C. 4113.52.
{¶ 48} As the trial court decided this case on Civ.R. 12(B)(6) motions to dismiss, the question whether retaliation actually occurred is not ripe for determination, but if Hulsmeyer’s allegations of retaliation are true, permitting the alleged retaliation for Hulsmeyer’s reporting of suspected abuse or neglect would be contrary to the public policy underlying R.C. 3721.22 and 3721.24, even without a report to the director of health. See Sutton v. Tomco Machining, Inc., 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 25-27 (retaliatory dismissal of an employee who is injured on the job, but who has not yet instituted a workers’ compensation claim, jeopardizes public policy against retaliation in R.C. 4123.90, even though R.C. 4123.90 does not provide a statutory remedy in that situation). And terminating Hulsmeyer for informing Cinquina’s family of the suspected abuse would be contrary to the requirement that a resident’s sponsor be promptly informed of any change in the resident’s medical status and would jeopardize the public policy evident in R.C. 3721.13. For these reasons, I would reverse the court of appeals’ judgment and remand the cause to the trial court for reinstatement of Hulsmeyer’s common-law wrongful-discharge claim. Accordingly, I respectfully dissent.
*251 Tucker Ellis, L.L.P., Susan M. Audey, and Victoria L. Vance, for appellant and cross-appellee Brookdale Senior Living, Inc.
Dinsmore & Shohl, L.L.P., Michael W. Hawkins, and Faith C. Whittaker, for appellants and cross-appellees Hospice of Southwest Ohio, Inc., and Joseph Killian.
The Gittes Law Group, Fredrick M. Gittes, and Jeffrey P. Vardaro, urging affirmance for amicus curiae Ohio Employment Lawyers Association.
Ohio Disability Rights and Law Center, Inc., Andrew Brennan, Kristen Henry, and Michael Kirkman, urging affirmance for amici curiae Disability Rights Ohio, AARP, National Senior Citizens Law Center, National Law Health Program, and National Disability Rights Network.