NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0506n.06

No. 19-4078

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 27, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CECIL GOFF, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| NATIONWIDE MUTUAL INSURANCE, CO., et | ) | SOUTHERN DISTRICT OF |
| al. | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    DONALD, THAPAR, and NALBANDIAN, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** This case regards the validity of an arbitration clause in an agreement between Plaintiff-Appellant Cecil Goff and his employer, Defendant-Appellee Nationwide Mutual Insurance Company ("Nationwide"). After Nationwide terminated Goff, he filed suit alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1961. Nationwide responded with a motion to dismiss Goff's complaint and moved to compel arbitration per the terms of its contract with Goff.

The arbitration clause provides that Nationwide retains the right to change, alter, amend, or otherwise modify the rules and procedures of any arbitration proceedings between Goff and Nationwide without providing direct notice to Goff or receiving his consent to the modifications. The district court concluded that, although one-sided, this provision is not procedurally unconscionable because it does not pertain to the formation of the arbitration agreement. On

appeal, Goff maintains that the provision renders the arbitration clause unconscionable and illusory. We affirm.

**I.**

Goff began working for Nationwide as a sales manager in the early 2000s. June of 2013, Goff decided to join Nationwide's "Advantage Program," which would allow him to become an insurance program agent. To join the program, Goff executed Nationwide's Advantage Program Independent Contractor Exclusive Agent Master Agreement (the "Advantage Agreement"). The Advantage Agreement included the following arbitration clause, which is the subject of this appeal:

> 35. **All Controversies and Disputes Between the Parties Subject to Mandatory Binding Arbitration**. Without affecting Nationwide's rights under Section 30(E) of this Agreement, any controversy, claim or dispute between Agent and Nationwide, including, but not limited to, any claims arising out of or relating to any aspect of the parties' relationship, before, during or after the cancellation of the Agreement, whether based upon contract, tort, statute, fraud, misrepresentation or any other legal theory, shall be adjudicated by mandatory binding arbitration pursuant to the Arbitration Procedures for Nationwide Agents (the "Arbitration Procedures") and those Nationwide Arbitration Rules (the "Nationwide Arbitration Rules") set forth on Agent Gateway [Nationwide's intranet] or such other place designated by Nationwide and accessible to Agent. Agent may obtain a copy of the Arbitration Procedures and the Nationwide Arbitration Rules from Nationwide at any time by submitting a written request to Agent's regional sales management or agtdisp@nationwide.com. Nationwide shall have the right to change, alter, amend or otherwise modify such Arbitration Procedures and/or the Nationwide Arbitration Rules at any time and from time to time and Agent acknowledges and agrees that any such change, alteration, amendment or limitation shall become effective on the date published by Nationwide.
>
> The parties acknowledge and agree that any and all proceedings and awards relating to any mandatory binding arbitration proceeding shall be kept confidential and shall not be disclosed or imparted by either party as further set forth in the Nationwide Arbitration Rules.
>
> **THE PARTIES UNDERSTAND THAT THEY ARE GIVING UP THE RIGHT TO: (A) PARTICIPATE IN ANY CLASS ACTION; AND (B) HAVE ANY CLAIM OR DISPUTE BETWEEN THEM DECIDED BY A COURT OR JURY.**

Goff signed his initials directly after this clause. After Goff's initials, the clause continues, stating:

> This Agreement and the Sub-Agreements provide for transactions in interstate commerce by and among the parties and are subject to the provisions of the Federal Arbitration Act which shall govern the enforcement and interpretation of this Section.
>
> Any arbitration proceeding, action, suit or proceeding at law or in equity brought under this Agreement or any Sub-Agreement must be commenced and process must be served within the shorter of: (i) three (3) years after the cause of action accrues; or (ii) to the extent Ohio law provides for any shorter statute of limitations applicable to the particular claim within that time period.
>
> . . .
>
> Except as otherwise provided in this Agreement, this Section does not limit either party's right to pursue equitable remedies (including, without limitation, preliminary and permanent injunctive relief) from a court of competent jurisdiction before, after, or during the pendency of any arbitration, and the exercise of any such remedy does not waive either party's agreement to participate in arbitration.
>
> . . .
>
> 36. **Attorneys' Fees.** In the event that Nationwide is successful in any arbitration, suit or proceeding brought or instituted to enforce any of the provisions of this Agreement or any Sub-Agreement, or on account of any damages sustained by Nationwide by reason of a violation of the terms or provisions of this Agreement or any Sub-Agreement, Agent agrees to pay to Nationwide all reasonable attorneys' fees and expenses incurred in the prosecution or defense of such action or proceeding, unless prohibited or limited by applicable law.

In July of 2015, Nationwide terminated Goff for failing to meet his production targets. In response to his termination, Goff filed the present action on behalf of himself and others similarly situated alleging RICO violations and violations of California state law.[1] Goff initially filed suit in the Central District of California, however, upon a timely motion from the defendants, the district court transferred venue to the Southern District of Ohio.

---

[1] Over the course of his two years participating in the program, Goff invested approximately $200,000 of his own funds into his Nationwide agency to build a "book of business" for Nationwide. Upon his termination, however, Goff learned that despite this investment, he neither retained rights in the "book of business," nor was he entitled to receive any of the money he had invested in the program back. These grievances gave rise to his filing of the present lawsuit.

In response to Goff's First Amended Complaint, Nationwide filed an Amended Motion to Dismiss the First Amended Complaint, arguing that Goff should be compelled to arbitrate his claims pursuant to the terms of the Advantage Agreement's Arbitration Clause. Finding the arbitration agreement valid and enforceable, the district court dismissed Goff's claims and compelled the parties to arbitrate their dispute.

## II.

### A. Motion for Judicial Notice

As a preliminary matter, we must resolve Goff's motion for this Court to take judicial notice of a factual affidavit and related exhibit filed in a separate state court action.

Pursuant to Rule 201(b) of the Federal Rules of Evidence, we may take judicial notice of "a fact that is not subject to reasonable dispute" because that fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Judicial records are a source of 'reasonably indisputable accuracy' when they record some judicial action such as dismissing an action, granting a motion, or finding a fact. Courts can properly notice prior judicial acts for the purpose of acting upon them." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (quoting 21B Charles Alan Wright et al., *Federal Practice and Procedure* § 5106.4 (2d ed. 2005)).

Notably, Goff did not seek to include these documents in the record at any point during the proceedings before the district court. Although Goff asks us to take judicial notice of documents constituting part of another court's judicial record, he also asks us to consider the substance of these documents in support of his appeal. He is thus asking us to supplement the record on appeal with documents he failed to present to the district court for consideration.

This Court traditionally will not take judicial notice of documents in order to allow parties to supplement the record with documents they failed to first present to the district court for consideration. *See, e.g.*, *Davis v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012) (declining to take judicial notice of exhibits from other litigation because appellant requested that the Court rely on the factual assertions within those exhibits in an effort to supplement the record). Accordingly, we deny Goff's motion to take judicial notice of these documents and decline to consider his arguments related to these documents.

### B.  Standard of Review

"We review a district court's ruling on a motion to compel arbitration de novo." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 194 (6th Cir. 2016). "Before compelling an unwilling party to arbitrate . . . the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Id.* at 195 (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Thus, the Court views all facts and inferences in the light most favorable to the non-moving party to determine whether "a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.*

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "is at bottom a policy guaranteeing the enforcement of private contractual agreements" arising from a "liberal federal policy favoring arbitration agreements."

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

"We review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). Both parties agree that Ohio law governs the arbitration clause at issue. "In applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court. Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) (citation omitted). "[W]here a state appellate court has resolved an issue to which the high court has not spoken, we will normally treat [those] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently," regardless of whether the decision is published or unpublished. *Aarti Hospitality, LLC v. City of Grove City, Ohio*, 350 F. App'x 1, 7-8 (6th Cir. 2009) (alterations in original) (quoting *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 n.3 (6th Cir. 2000)). "We may refuse to follow intermediate appellate court decisions where we are persuaded that they fail to reflect state law correctly, but we 'should not reject a state rule just because it was not announced by the highest court of the state,' even if we believe that the rule is 'unsound.'" *Ziebart Int'l Corp. v. CNA Ins. Cos.*, 78 F.3d 245, 251 (6th Cir. 1996) (quoting *FL Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 214, 219 (6th Cir. 1990)).

In evaluating the validity of the arbitration agreement, the Court must only analyze the arbitration clause itself; arguments concerning the validity of the contract as a whole are inapposite at this stage. *Great Earth Cos.*, 288 F.3d at 889-90. "[G]enerally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or

unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). However, "state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011)). To that end, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24-25.

## C. Scope of Review

On appeal, Goff argues that the arbitration clause in the Advantage Agreement is unenforceable because it (1) is an illusory agreement; (2) contains essential terms that are insufficiently definite, rendering it impossible for a "meeting of the minds" to have occurred; and (3) is unconscionable. Nationwide vehemently asserts that Goff failed to adequately raise any argument aside from his unconscionability challenge in his briefing before the district court and thus cannot do so now. We agree with Nationwide.

While the case was still pending in the Central District of California, Nationwide filed a motion to dismiss Goff's First Amended Complaint. In response, Goff filed an opposition brief arguing that the arbitration clause is illusory and lacked mutuality of obligation and, separately, that the arbitration clause is unconscionable. After the case was transferred to the Southern District of Ohio, Nationwide filed an amended motion to dismiss. In his response to Nationwide's amended motion dismiss, Goff chose to solely argue that the arbitration clause is unconscionable. Although Goff mentioned the illusory nature of the arbitration agreement and that it lacked mutuality of obligation in his revised opposition brief, these arguments were presented as sub-

arguments in support of Goff's unconscionability challenge. In turn, the district court only addressed Goff's unconscionability challenge.

This Court typically will not consider arguments presented for the first time on appeal. *United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006). Accordingly, in light of Goff's decision to change his argument in response to Nationwide's amended motion to dismiss, we limit our review solely to his arguments regarding the unconscionability of the arbitration agreement and decline to exercise our discretion to consider arguments a party failed to properly raise before the district court. *See United States v. Martin*, 438 F.3d 621, 627 (6th Cir. 2006) ("The general principle 'that courts of appeals do not consider claims or arguments that were not raised before the district court,' however, 'is a prudential rule, not a jurisdictional one.'" (quoting *United States v. Hayes*, 218 F.3d 564, 567-78 (6th Cir. 2000))).

## D. Unconscionability

Goff argues that the arbitration clause in the Advantage Agreement is unconscionable. Ohio's unconscionability doctrine has two components: "'(1) substantive unconscionability, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible.' Both elements must be present to find a contract unconscionable." *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 758 N.E.2d 1173, 1181 (Ohio Ct. App. 2001) (internal citation omitted) (quoting *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 680 N.E.2d 240, 243 (Ohio Ct. App. 1996)). "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Eastham v. Chesapeake Appalachia, LLC*, 754 F.3d 356, 365 (6th Cir. 2014) (internal citation (quoting *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009)).

Goff first contends that the district court erred in rigidly evaluating whether the arbitration clause is both procedurally and substantively unconscionable, arguing that Ohio law dictates that analysis of these elements is to be done along a spectrum. For support, Goff points to *DeVito v. Autos Direct Online, Inc.*, which states that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required." 37 N.E.3d 194, 201 (Ohio Ct. App. 2015) (en banc) (citing 1 E. Allan Farnsworth, *Farnsworth on Contracts*, § 4.28, at 585 (3d ed. 2004)). Goff's argument is unpersuasive. Although Ohio law dictates that a court's findings as to "whether an arbitration agreement is procedurally unconscionable . . . must be considered in tandem with the analysis on substantive unconscionability," Goff must still show that the arbitration agreement at issue is *both* procedurally and substantively unconscionability. *Hayes*, 908 N.E.2d at 412. Thus, the district court did not err in declining to address whether the arbitration agreement is substantively unconscionable upon finding that it was not procedurally unconscionable.

To show that an agreement is procedurally unconscionable, the party asserting the agreement's unconscionability must demonstrate that "the individualized circumstances surrounding the contract were so unfair as to cause there to be no voluntary meeting of the minds." *Sikes v. Ganley Pontiac Honda, Inc.*, No. 82889, 2004 WL 67224, at *2 (Ohio Ct. App. Jan. 15, 2004).

> In determining procedural unconscionability, Ohio courts look to "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible."

*Morrison*, 317 F.3d at 666 (quoting *Cross v. Carnes*, 724 N.E.2d 828, 837 (Ohio Ct. App. 1998)). "The crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the

important terms hidden in a maze of fine print . . . ?'" *Id.* (quoting *Ohio Univ. Bd. of Trs. v. Smith,* 724 N.E.2d 1155, 1161 (Ohio Ct. App. 1999)) (alterations in original).

To support his argument that the arbitration clause at issue is procedurally unconscionable, Goff points primarily to *Arnold v. Burger King*, 48 N.E.3d 69 (Ohio Ct. App. 2015). Like the provision at issue in this case, under the arbitration clause at issue in *Arnold* the appellees retained the ability to change the rules and procedures of arbitration at any time without notifying the appellant, which the court held was substantively unconscionable. *Id.* at 89-90. Although the *Arnold* court determined that the arbitration agreement was procedurally unconscionable on other grounds, it noted in a footnote that "[t]his may also be considered an element of procedural unconscionability as it involves the acquiescence to future, unknown, and uncontrollable terms, subject to change without notice at any time." *Id.* at 89 n.10.

In opposition, Nationwide points to *Smith v. Nationwide Mutual Insurance Company*, a subsequent Ohio appellate court case that addressed whether the identical arbitration clause at issue in this case was procedurally unconscionable due to Nationwide's unfettered power to alter the arbitration rules and procedures. 120 N.E.3d 72 (Ohio Ct. App. 2018). In its analysis, the *Smith* court outright rejected the *Arnold* court's conclusion, noting that procedural unconscionability specifically pertains to the formation of the agreement. *Id.* at 78-79. Reasoning that Nationwide's authority to alter the rules and procedures of arbitration at any time "is a substantive right that Nationwide may invoke during future dispute-resolution proceedings between the parties, not one that it could invoke during the formation of the Advantage Agreement," the *Smith* court concluded that the "provision does not support [an] argument for procedural unconscionability." *Id.* at 79.

As the district court noted, this leaves the Court with two conflicting Ohio appellate cases. The district court found *Smith*'s reasoning slightly more persuasive, agreeing that the argument regarding Nationwide's authority under the agreement to alter the arbitration rules and procedures at any time related to substantive unconscionability, not procedural unconscionability.

Although the *Smith* court determined that the unilateral modification right at issue was a "substantive right" that Nationwide could not "invoke during the formation of the Advantage Agreement," the court failed to explain why this precludes review of such a provision in the procedural-unconscionability context with regard to the definiteness of the contract's terms. *Smith*, 120 N.E.3d at 79. Indeed, as the *Smith* court acknowledged, "[p]rocedural unconscionability concerns 'whether alterations to the contract were possible' during the formation of the contract containing the arbitration provision." *Id.* (quoting *Shearer v. VCA Antech, Inc.*, No. 11AP-44, 2011 WL 4600444, at *5 (Ohio Ct. App. Oct. 6, 2001)). Further, one of Nationwide's repeated assertions is that the terms of Nationwide's arbitration rules and procedures were appropriately incorporated by reference into the arbitration agreement. Thus, it appears that Nationwide effectively concedes that the terms of its arbitration rules and procedures were intended to frame its agreement to arbitrate any disputes arising between itself and Goff. Accordingly, this "substantive right" to modify the terms of the agreement at any time also inherently authorizes Nationwide to alter the terms of the arbitration agreement during the contract's formation. As the *Arnold* court noted, however, "no single factor alone determines whether a contract is procedurally unconscionable; a court must consider the totality of the circumstances." 48 N.E.3d at 86. Thus, as explained below, Goff's failure to establish that the totality of the circumstances indicate that "the individualized circumstances surrounding the contract were so unfair as to cause there to be no voluntary meeting of the minds" leads us to

conclude that the arbitration agreement is not procedurally unconscionable. *Sikes*, 2004 WL 67224, at *2.

Goff contends that the clause is procedurally unconscionable due to the parties' difference in bargaining power and because the contract at issue is an adhesion contract. Aside from mentioning the "adhesive nature" of the contract at issue, Goff does not further develop this argument. This Court has "cautioned that '[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,' and that '[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997)). Accordingly, the Court need not address whether this is an adhesion contract.

As to Goff's imbalance-of-bargaining-power argument, the Ohio appellate court already squarely addressed the issue in *Smith*. As Nationwide points out in its brief:

> Considering the power dynamic between Nationwide and an Advantage Program agent (like Goff), the appellate court in *Smith* held that "the difference in bargaining power" was not "great enough to support a finding of procedural unconscionability," as the agent had, among other things, "worked with Nationwide for over two years before . . . enter[ing] the Advantage Program." *Smith*, 120 N.E.3d at 80.

Prior to signing this agreement, Goff worked for Nationwide for ten years, giving him ample opportunity to develop a thorough understanding of the Advantage Program he was joining. Although Nationwide, as the drafter of the agreement, and Goff's employer clearly retained an advantage in bargaining power, Goff has failed to show that it was a sufficient imbalance to warrant finding the contract procedurally unconscionable on those grounds. In light of Goff's relative sophistication as well as his familiarity and experience with the Advantage Program due to his decade-long employment history with Nationwide, we find that the arbitration agreement is

not procedurally unconscionable. Further, as explained above, because we find that the provision is not procedurally unconscionable, we need not determine whether it is substantively unconscionable.

## III.

For the forgoing reasons, we **AFFIRM** the district court's dismissal of Goff's First Amended Complaint and its order compelling arbitration.